IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$12,245.00 IN U.S. CURRENCY,<br><br>Defendant *in Rem*. | Civil No. 1:22-cv-_____ |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW the plaintiff, the United States of America, by and through its counsel, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Kevin Hudson, Annie Zanobini, and William Homer, Assistant United States Attorneys, and brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. The United States brings this action *in rem* seeking the forfeiture of all right, title, and interest in the defendant *in rem* identified in the case caption above (the "Defendant Property").

2. The Defendant Property constitutes proceeds of violations of 21 U.S.C. § 841(a)(1) (Distribution of Marijuana, a Schedule I controlled substance), and as such, it is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## THE DEFENDANT *IN REM*

3. The Defendant Property was seized on June 12, 2020, from a Cadillac vehicle displaying Virginia license plates, registration number UYC-4369, following a traffic stop at 1200 South Haynes Street in Arlington, Virginia, within the Eastern District of Virginia. The Defendant Property is currently in the possession of the United States Marshals Service in Richmond, Virginia.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over actions commenced by the United States under 28 U.S.C. § 1345 and over forfeiture actions pursuant to 28 U.S.C. § 1355(a) and (b).

5. This Court has *in rem* jurisdiction under 28 U.S.C. § 1355(b)(1)(B) because the Defendant Property is found within the Eastern District of Virginia, and 28 U.S.C. § 1395(b) provides for forfeiture of property in the district in which the property is found.

6. Venue is proper within this judicial district under 28 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b) because the Defendant Property is located in this district.

## FACTUAL ALLEGATIONS

7. On June 12, 2020, Arlington County Police Officer Matthew Cudd was on routine patrol at the intersection of South Hayes Street and South 12th Street in Arlington, Virginia.

8. At approximately 11:34 a.m., Officer Cudd observed a Cadillac vehicle with illegal window tint, which prevented Officer Cudd from identifying any persons inside the vehicle. The vehicle displayed Virginia license plates, registration number UYC-4369.

9. Officer Cudd initiated a traffic stop of the vehicle, and as he approached the passenger side of the vehicle, he identified a strong odor of raw marijuana coming from inside the vehicle.

10. Upon making contact with the passenger side of the vehicle, Officer Cudd discovered that the vehicle was occupied by three individuals.

11. In addition to the individuals occupying the driver's seat and the front passenger's seat, Richard Anderson was sitting in a rear passenger's seat.

12. Given the strong odor of marijuana, Officer Cudd explained that he intended to perform a search of the vehicle and asked that the three individuals exit the vehicle.

13. During the search of the vehicle, Officer Cudd noticed that in the back seat of the vehicle, just behind the center armrest, there was a door that allowed access to the vehicle's trunk. Upon opening that door, Officer Cudd observed a small, single-strap backpack just inside the trunk.

14. Officer Cudd retrieved the backpack, and Mr. Anderson immediately advised that the backpack belonged to him.

15. The backpack had a strong smell of marijuana emanating from within it, and upon looking inside the backpack, Officer Cudd observed a large quantity of U.S. currency.

16. Officer Cudd asked Mr. Anderson how much money was in the backpack, to which Mr. Anderson responded: "About twelve thousand."

17. At that point, the backpack was secured in Officer Cudd's police vehicle, and Mr. Anderson was escorted away from the other two individuals. Mr. Anderson was read his *Miranda* rights, which he waived and agreed to speak to Officer Cudd.

18. Officer Cudd asked Mr. Anderson why he had such a large amount of cash, and Mr. Anderson replied that he was purportedly "looking to buy" a vehicle—a BMW that he had found online.

19. When questioned about his employment, Mr. Anderson stated that he worked for Canyon Construction in Maryland, but he was unable to provide any information to confirm his employment such as telephone number, supervisor, or the address of the employer.

20. Officer Cudd continued to ask Mr. Anderson about his employment, and Mr. Anderson eventually conceded that he been laid off from his construction job and was collecting unemployment. In other words, Mr. Anderson's only source of legitimate income came in the form of unemployment assistance.

21. Without being prompted to do so, Mr. Anderson retrieved his cell phone from his pocket and handed it to Officer Cudd, stating: "Look at it for yourself." Officer Cudd noticed an unemployment website that was pulled up on the cell phone's internet browser.

22. Mr. Anderson then invited Officer Cudd to review the text messages on the cell phone, as those messages would ostensibly support Mr. Anderson's statement about his intention to purchase a vehicle with the cash in the backpack.

23. Upon opening the text message application, Officer Cudd observed a text message exchange between Mr. Anderson and a phone number ending in -8639. The text messages are transcribed as follows:[1]

| | |
|---|---|
| (XXX) XXX-8639: | What's the prices for a half all flavors |
| Mr. Anderson: | 125 |

---

[1] A screen shot of the text message exchange is also attached as Exhibit A.

| | |
|---|---|
| (XXX) XXX-8639: | What flavors you got today |
| Mr. Anderson: | Snickerdoodles<br>Sour Patch<br>Candyland<br>Skywalker OG |
| (XXX) XXX-8639: | What's the best one |
| Mr. Anderson: | I'm not going to hold you all of them good |
| (XXX) XXX-8639: | Can I do half south patch then half Skywalker |
| Mr. Anderson: | U want 2/7 right |
| (XXX) XXX-8639: | Nah just on half of the sky Walker |
| Mr. Anderson: | Just a half of Skywalker |
| (XXX) XXX-8639: | Yes |
| (XXX) XXX-8639: | 125? |
| Mr. Anderson: | Wya |
| Mr. Anderson: | Yeah |
| (XXX) XXX-8639: | You serving today? |
| Mr. Anderson: | 3921 ames st n.e |

24.  Notably, each "flavor" that Mr. Anderson listed in the above exchange (*i.e.*, Snickerdoodles, Sour Patch, Candyland, and Skywalker OG) is a unique strain of marijuana. And the last text message that Officer Cudd observed in this exchange was sent on June 11, 2020—the day prior to the seizure of the Defendant Property.

25.  Officer Cudd also observed a separate text message exchange between Mr. Anderson and a phone number ending in -9965, in which the first visible message is a picture of apparent marijuana sent by Mr. Anderson with the caption "Wife beater" in white block letters

5

overlaid on top of the picture. The next two messages in this exchange were received by Mr. Anderson on June 10, 2020, and state: "Gelato aint gone is it bruh?" and "Send me ah flick of it."[2] That same day—two days prior to the traffic stop—Mr. Anderson responded: "It's gone now bro."[3]

26. Shortly after Officer Cudd observed these text messages, Taskforce Officer ("TFO") Janet Yonkers from the Drug Enforcement Administration ("DEA") arrived on the scene. Upon arrival, TFO Yonkers learned that Mr. Anderson had a criminal history that included drug-related convictions.

27. TFO Yonkers asked to speak to Mr. Anderson, to which Mr. Anderson consented.

28. In response to TFO Yonkers' questioning regarding the cash found in the backpack, Mr. Anderson showed TFO Yonkers a series of text messages that purportedly supported Mr. Anderson's claim that he intended to use the cash to buy a vehicle.

29. TFO Yonkers observed the following:[4]

    a. On June 5, 2020, Mr. Anderson received two messages from a phone number ending in -3594 that stated: "Aautobrokers.com" and "518 N Crain Hiway Glen burnie Md 21061."

    b. On June 7, 2020, Mr. Anderson engaged in the following text message exchange with the -3594 number:

> Mr. Anderson: Good day I was calling about the dmw I really want the car but only have 5500 trying to get the rest I'll

---

[2] Like the "flavors" referenced in the preceding paragraph, "Gelato" is also a unique strain of marijuana.

[3] A screen shot of this text message exchange is attached as Exhibit B.

[4] A screen shot of the relevant text message exchange is attached as Exhibit C.

|  |  |
|---|---|
|  | come get it today if ur willing to take that |
| Mr. Anderson: | If not I understand but I'm really trying to get the rest of the money |
| (XXX) XXX-3594: | Get 5700 and come get it today |
| (XXX) XXX-3594: | I have been really busy but let's close it out |
| Mr. Anderson: | Okay about to try and get 200 more dollars right now |
| (XXX) XXX-3594: | Okay |

c. On June 8, 2020, Mr. Anderson resumed the conversation:

| Mr. Anderson: | Hey GM I have the rest of the cash I can come down around three 3:30 is that cool |
|---|---|
| (XXX) XXX-3594: | Ok |
| Mr. Anderson: | Biscotti in bro[5] |
| Mr. Anderson: | Sorry wrong person |
| (XXX) XXX-3594: | Ok |

d. Finally, on June 12, 2020, at 10:42 a.m.—less than an hour before the traffic stop initiated by Officer Cudd—Mr. Anderson sent a text message stating: "Good morning I still only have 5500 couldn't get the rest if ur willing to take that I'll come today."

30. After reviewing these text messages, TFO Yonkers asked how Mr. Anderson had earned the money that was in his possession, given that Mr. Anderson had been unemployed for several months. Mr. Anderson claimed that he had been saving money "for a while."

---

[5] "Biscotti" is yet another strain of marijuana.

31. TFO Yonkers asked about his monthly expenses, and Mr. Anderson conveyed that, despite carrying more than $12,000 in cash, he was receiving assistance for housing and food through the District of Columbia social service department.

32. TFO Yonkers then inquired as to how Mr. Anderson had obtained the cash. TFO Yonkers specifically asked Mr. Anderson if he withdrew the cash from a bank.

33. In response, Mr. Anderson pulled up his bank account information on his phone, but refused to allow TFO Yonkers to view the account information. Ultimately, Mr. Anderson did not provide any information to account for his possession of over $12,000 in cash.

34. At some point during the traffic stop, Mr. Anderson's girlfriend, Lyka Austin, was seen standing outside of the Pentagon City Mall, which was directly across from the traffic stop.

35. TFO Yonkers spoke to Ms. Austin, who claimed that a portion of the money found in the backpack belonged to her. Ms. Austin initially stated that $3,500 of the cash was hers, but later increased her purported interest to $3,700.

36. Ms. Austin asserted that she and Mr. Anderson were on the way to buy a vehicle, but when asked to expand upon the purported purchase, Ms. Austin could not provide any details regarding the purchase price or any details of the vehicle itself that she and Mr. Anderson allegedly intended to purchase.

37. When asked about the source of her claimed portion of the currency, Ms. Austin stated that she worked at Zara, a retail store located in the Pentagon City Mall, and that she made about $1,400 per paycheck for a total of $2,800 per month. Ms. Austin, however, refused to offer any proof of income.

38. In fact, Ms. Austin's statements regarding her income were not truthful. The Wage History Report from the Virginia Employment Commission shows that for the first quarter

of 2020, Ms. Austin earned a total of $4,688.99 in wages, which equates to approximately $1,563 per month. And based on the figures reported in the wage-history report, Ms. Austin earned an average of only $4,386.09 per quarter—or approximately $1,462 per month—in 2019.

39. In light of TFO Yonkers' training and experience, the lack of any substantiated explanation for how Mr. Anderson and Ms. Austin obtained the cash, the text messages on Mr. Anderson's phone indicating that he was engaged in the distribution of marijuana, the strong odor of marijuana emanating from the car and the backpack, and Mr. Anderson's drug-related criminal history, TFO Yonkers advised that the DEA would be seizing the Defendant Property as drug proceeds.

40. TFO Yonkers began to explain the seizure process, but Mr. Anderson became belligerent and requested a supervisor. TFO Yonkers accommodated that request and coordinated for a supervisor to respond to the scene.

41. Prior to the arrival of the supervisor, Mr. Anderson asked TFO Yonkers to speak with a lawyer and offered his phone to TFO Yonkers. As TFO Yonkers lifted the phone to her ear, she immediately smelled the odor of marijuana coming from the phone.

42. TFO Yonkers identified herself to the person on the phone, but she did not engage in the conversation and terminated the call after that person—later identified as Mr. Anderson's aunt—began to demand information in a threatening manner.

43. Thereafter, law enforcement again attempted to explain the seizure process, but Mr. Anderson again became loud and belligerent, yelling vulgar language.

44. Mr. Anderson was provided a DEA 12 receipt for the Defendant Property, which he accepted. Immediately thereafter, Mr. Anderson returned to the back seat of the vehicle that was the subject of the traffic stop, and the vehicle drove off.

45. Later, TFO Yonkers contacted the phone number with which Mr. Anderson exchanged text messages regarding the purported purchase of a vehicle. See supra ¶ 29.

46. The individual with whom TFO Yonkers spoke stated that he was expecting the call because "the guy that's buying the car" (*i.e.*, Mr. Anderson) called him when he was being pulled over by law enforcement and asked him to verify his story about buying the vehicle.

47. Notably, the individual conveyed that: (i) he did not know Mr. Anderson's name, as Mr. Anderson never provided it to him; (ii) no money had been exchanged for the car; and (iii) Mr. Anderson never called him prior to being pulled over.

## CLAIM FOR RELIEF
### (Forfeiture under 21 U.S.C. §§ 881(a)(6))

48. The United States incorporates by reference Paragraphs 1 through 47 as if fully set forth herein.

49. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture, "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

50. As set forth above, the Defendant Property constitutes proceeds of violations of 21 U.S.C. § 841(a)(1) (Distribution of Marijuana, a Schedule I controlled substance).

51. As such, the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that judgment be entered in its favor against the Defendant Property; that pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed; that the defendant property be forfeited to the United States of America and delivered into its custody for disposition according to law; that plaintiff be awarded its costs and disbursements in this action; and for such and further relief as this Court may deem just and proper.

Dated: July 14, 2022

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Kevin Hudson
William J. Homer
Assistant United States Attorneys
Attorneys for the United States
721 Lakefront Commons, Suite 300
Newport News, Virginia 23606
Office Number: (757) 591-4000
Facsimile Number: (757) 591-0866
kevin.hudson@usdoj.gov
william.homer@usdoj.gov

and

Annie Zanobini
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office Number: (703) 299-3700
annie.zanobini@usdoj.gov

## VERIFICATION

I, Janet A. Yonkers, Taskforce Officer, Drug Enforcement Administration, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture *in Rem* is based on information known by me personally and/or furnished to me by various federal, state, and local law enforcement agencies, and that everything contained herein is true and correct to the best of my knowledge.

Executed at Dulles, Virginia, this 11 day of July, 2022.

Janet A. Yonkers
Taskforce Officer
Drug Enforcement Administration